WIRTA, APPELLANT, *v.* NORTH BUTTE MINING CO. ET AL.,
RESPONDENTS.

(No. 4,832.)

(Submitted September 13, 1922.   Decided September 25, 1922.)

[210 Pac. 332.]

*Personal Injuries—Master and Servant—Mines and Mining—*
*Workmen's Compensation Act—Remedies Exclusive.*

Workmen's Compensation Act—Remedies Exclusive.
1.   The Workmen's Compensation Act, in so far as it provides compensation to an injured employee for injuries received from an accident growing out of and in the course of his employment, is exclusive of all other remedies.

Same—Master and Servant—Existence of Relation.
2.   *Held*, that where a fire occurred in a mine at the time plaintiff was at work, whereupon he ceased working and, being unable to make his escape, was compelled to remain in the mine for forty hours during which time he sustained injuries due to smoke and gas, he was in no position to urge that when the injuries were suffered the relation of master and servant did not exist between him and defendant company and that therefore he could sue for damages irrespective of the provisions of the Compensation Act making the compensation therein provided exclusive of all other remedies.

Same—Employment—How not Terminated.
3.   Plaintiff having predicated his cause of action upon the relation of master and servant, his contention that his detention in the mine after eight hours had expired constituted false imprisonment as well as a violation of the eight-hour law thus terminating his employment, is without merit, since his employment could not be terminated in any such manner.

Same—Question of Employment—Test.
4.   The test to be applied to determine whether plaintiff employee and defendant mining company were subject to the Workmen's Compensation Act is whether plaintiff could enforce liability against defendant under the Act for the injuries sustained by him, and if so, he as well as the company were bound by its provisions.

Same—Liability Under Act—How Created.
5.   To create liability under the Workmen's Compensation Act, there must have been an accident causing injury to the employee which arose out of his employment and in the course thereof.

Same—Compensation for Injuries are not Damages.
6.   The compensation provided for in the Workmen's Compensation Act is in no sense to be considered as damages for the injured employee or to his dependents in case of his death.

---

Applicability of workmen's compensation acts to mining employments, see note in Ann. Cas. 1917D, 26.
Injuries to miners as accidents in course of employment, see notes in Ann. Cas. 1913C, 8, 14, 15; Ann. Cas. 1914B, 502; Ann. Cas. 1916B, 1306.

Same—Injuries Arising Out of and in Course of Employment—Case at
-Bar.

7. *Held,* that injuries to a miner caused by smoke and gas incident
to a fire in the mine, and sustained by him after he had ceased work-
ing and while he was compelled to remain therein until rescued, arose
out of and in the course of his employment, and that, having agreed
to be bound by the provisions of the Workmen's Compensation Act,
he was bound by the provision making the compensation allowed by
it exclusive of all other remedies, and was therefore barred from
bringing an independent action for damages.

*Appeals from District Court, Silver Bow County; Joseph
R. Jackson, Judge.*

ACTION by John Wirta against the North Butte Mining
Company and another. From a judgment of dismissal and
from an order denying a new trial, plaintiff appeals. Affirmed.

*Mr. Alexander Mackel* and *Mr. H. A. Tyvand,* for Appel-
lant, submitted a brief; *Mr. Tyvand* argued the cause orally.

The relation of master and servant arises out of contract.
The duties, rights, obligations and responsibilities of one to
the other arise from the contract of master and servant having
been entered into. The length of time a person is employed
is determined by the contract, and when the contract relation
of master and servant ceases, their duties and responsibilities
as such cease. If the contract relation of master and servant
did not exist at the time plaintiff sustained his injuries, then
the plaintiff sustained his injuries outside of his employment
and the Montana compensation law does not apply. (26
Cyc. 968, 969, 1082.) "It is a question of fact up to what
point of time the employment may be said to continue after
the employee has ceased working." (Corpus Juris, p. 81;
26 Cyc. 971, 1459.)

The injuries in the instant case did not arise out of plain-
tiff's employment. The company in this case hired plaintiff
as a miner. The injuries to plaintiff are due, not to risk
of quartz mining, but to a trap made by the defendant through
its criminal negligence. Further proof of the fact that this
is not a risk in ordinary quartz mining is the fact that there

are no decided cases, as far as we have been able to learn, that approach the conditions and criminal negligence in the instant case. There was an intervening, or rather independent, criminal cause not incident to plaintiff's employment which caused his injuries. Plaintiff was restrained of his liberty against his will and in violation of the contract of employment and of the law of egress and the law of a safe place to work, the eight-hour statute and constitutional provisions, and thirteenth amendment to the United States Constitution, if the plaintiff is said to have been in employment of defendant for forty hours against his will.

In the instant case, after breach of defendant's obligation to plaintiff, plaintiff made up his mind to leave his employment, and left his employment, in order to save his life. Must it then be said that plaintiff was in his employment in order to give immunity to the employer from civil liability,—particularly after a permanent breach of obligation of the defendant to plaintiff? In the case of *Ellsworth* v. *Metheney,* 104 Fed. 119, 51 L. R. A. 389, 44 C. C. A. 484, Metheney, a coal miner, during the noon hour, while not engaged in work, went to another part of the mine, to visit a friend, where he was injured by an electric wire, and it was held that he was not engaged in his employment when he was injured, but the defendant was held liable under the theory that Metheney was an invitee of defendant and that defendant had not exercised ordinary care in the use of his property.

The cases cited by the defendants in the district court are cases easily distinguishable from the instant case. In one respect they are distinguishable, in that there is not a single case where the length of time after a man ceased work or left his place of employment anywhere approaches forty hours—not even one hour. Next, not one of the cases cited and quoted by defendants have been confronted by an eight-hour statute, eight-hour constitutional provision and cases construing the eight-hour statute and the constitutional provision, the way our eight-hour law has been construed.

Does the Compensation Act abolish every remedy which the plaintiff may have had? Let it be remembered that the question is now raised by a person who was injured and who did not, and could not, receive compensation under this Compensation Act. A right which previously existed in him, guaranteed to him by the Constitution, was taken away and nothing was given to him in place thereof. Our Constitution provides (Art. III, sec. 6), "Courts of justice shall be open to every person and a speedy remedy afforded for every injury of person, property, or character, and that right and justice shall be administered without sale, denial or delay." Though this constitutional right is taken away from him there is no mention thereof in the title to the Act. It was contended in the oral argument and is contended now that the whole Act was unconstitutional on this ground. (36 Cyc. 1178.)

The only case at all in point with reference to taking away the common-law right is *Peet* v. *Mills*, 76 Wash. 437, Ann. Cas. 1915D, 154, L. R. A. 1916A, 358, 136 Pac. 685, but in that case the servant was injured during the time he was employed. It does not appear that there was a constitutional provision that the period of his employment was eight hours and that he was injured after that period, nor does it appear from the decision whether he was barred from any decision by the Compensation Act. It is easy to distinguish the case which arose in the state of Washington from the case at bar.

*Mr. L. O. Evans, Mr. W. B. Rodgers, Mr. D. Gay Stivers* and *Mr. D. M. Kelly,* for Respondents, submitted a brief; *Mr. Rodgers* argued the cause orally.

The appellant was an employee of the respondent company at the time of the happening of the accident resulting in the injuries he received, as that term is used in the Workmen's Compensation Act, and his rights, duties and liabilities determined thereby. So long as the plaintiff was at the plant and in the mine of the defendant, although he may have deter-

mined in his own mind to quit the defendant's employment, or may have been compelled to come to this conclusion on account of the intolerable conditions then existing, the defendant owed to him the duty of reasonable care in providing suitable means for his egress from the mine and in preventing any injury occurring to him from or on account of the defendant's negligence; and if, by reason of the negligence of the defendant, in setting or allowing to be set the fire which occasioned the quitting of the plaintiff, or by reason of the defendant's negligence in not providing suitable means of ingress and egress to and from the mine where the plaintiff was employed, the plaintiff was detained and received the injuries complained of, the duties and obligations of the defendant to the plaintiff, and the plaintiff to the defendant, remain the same, and arose out of the contract of employment, and any injury thereby received on account of the violation of these duties grew out of and was in the course of the employment of the plaintiff. (See *Brydon* v. *Stewart,* 2 Macq. 30; *Ewald* v. *Chicago & N. W. Ry. Co.,* 70 Wis. 420, 5 Am. St. Rep. 178, 36 N. W. 12; *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271, 18 Am. St. Rep. 441, 44 N. W. 270; *Riley* v. *Holland & Sons,* 6 Butterworth's Workmen's Compensation Cases, 155; *Fitzpatrick* v. *Hindley Field Colliery Co.,* 3 Minton-Senhouse Workmen's Compensation Cases, p. 37; *Sedlock* v. *Carr Coal Mining & Mfg. Co.,* 98 Kan. 680, L. R. A. 1917B, 372, 159 Pac. 9, 15 N. C. C. A. 237; *Kinney* v. *Baltimore & O. Employees' Relief Assn.,* 35 W. Va. 385, 15 L. R. A. 142, 14 S. E. 8; *City of Milwaukee* v. *Althoff,* 156 Wis. 68, L. R. A. 1916A, 327, 145 N. W. 238; *In re Brightman,* 220 Mass. 17, L. R. A. 1916A, 321, 107 N. E. 527; *Southern Surety Co.* v. *Stubbs* (Tex. Civ.), 199 S. W. 343.)

That where both the employer and employee are bound by the Compensation Act, the employee has no other right or cause of action against the employer, other than the right to receive the compensation therein provided for, is so clear from the language of the Act that argument is unnecessary.

Indeed, as we understand plaintiffs' counsel, they urge this abrogation of all other rights of action as a reason against the constitutionality of the law.

In addition to the cases which throw light upon this point, cited in our brief upon the constitutionality of the Workmen's Compensation Act, we invite the court's attention, if further light should be desired, to the following cases: *Peet* v. *Mills,* 76 Wash. 437, Ann. Cas. 1915D, 154, L. R. A. 1916A, 358, 136 Pac. 685; *Ross* v. *Erickson Constr. Co.,* 89 Wash. 634, L. R. A. 1916F, 319, 155 Pac. 153; *Meese* v. *Northern Pac. Ry. Co.,* 206 Fed. 222; *Northern Pac. Ry. Co.* v. *Meese,* 239 U. S. 614, 617, 60 L. Ed. 467, 36 Sup. Ct. Rep. 223 [see, also, Rose's U. S. Notes].

MR. JUSTICE FARR delivered the opinion of the court.

The plaintiff, John Wirta, brought this action against the defendant, the North Butte Mining Company, a corporation, and its superintendent, Norman Braly, to recover damages for personal injuries sustained by him while underground in the Speculator mine, a mining property operated by the North Butte Mining Company, due to a fire in the mine and the failure to provide sufficient exits in case of a fire.

At the trial, after the opening statement of plaintiff's counsel and the plaintiff had been sworn as a witness in his own behalf, defendants interposed an objection to the introduction of any evidence upon the ground that under the pleadings there was no material issue to be tried; that the complaint, the answer and the reply, taken in connection with a stipulation entered into between the parties and made a part of the record, show that at the time of the happening of the accident and the injury to the plaintiff therefrom, the plaintiff was employed in a hazardous employment, and that both the defendant company and the plaintiff were bound by the Workmen's Compensation Act (Laws 1915, Chap. 96), and that plaintiff has redress only according to the method and in the manner and to the extent provided for in the Act. This ob-

jection was sustained by the court, and thereupon, on motion of defendants, judgment was entered dismissing the action.  A motion for new trial was later made by plaintiff and denied by the court, and plaintiff appeals to this court from the order denying his motion for a new trial.

The complaint alleges and the answer admits the control and management of the Speculator mine by the North Butte Mining Company, which, for the sake of brevity, will hereafter be referred to as the "mining company," that access to this mine was had through a shaft known as the Granite Mountain shaft, in the charge and management of the mining company, which had been sunk to the depth of approximately 3,600 feet; that on the eighth day of June, 1917, the plaintiff was employed at crosscut No. 15, between the 2,400 foot level and the 2,600 foot level, both of which were connected with the Granite Mountain shaft, starting to work at 6 o'clock P. M. on said date with other employees of the defendant mining company, and that defendants were at the time of the accident operating said mine, and were engaged in the business of mining.  It is further alleged, and denied by the defendants: "That on the eighth day of June, 1917, the defendants * * * carelessly and negligently failed and neglected to provide, keep and maintain more than one passageway * * * open as a means of exit for the employees * * * mentioned, and especially this plaintiff, from their said place of work to the surface of said mine.  That on said day and for some time prior thereto, there was a certain passageway from the place where the said plaintiff was working * * * to a certain mine adjacent to the said Speculator mine, to-wit, to the High Ore mine, which furnished an exit to the surface.  That for a long time previous to the accident herein complained of the said passageway had been open; that at the time of the said accident the said passageway through the said High Ore mine way was open; that at the time of the said accident, plaintiff and his fellow-servants believed said passageway was open. * * *  That shortly before the time of this acci-

dent the said passageway through the said High Ore mine had been bulkheaded and closed with concrete; that at all times herein mentioned, the defendants knew said fact. * * * That * * * defendants carelessly and negligently failed and neglected to provide, keep, and maintain any other passageway from said plaintiff's place of employment to the surface, except the aforementioned, the said Granite Mountain shaft. * * * That on the said day the defendants herein carelessly and negligently caused and permitted a fire to be started in the aforesaid shaft, and that as the result of the said fire the whole mine, and especially the place where the plaintiff was working, became filled with gas, smoke, heat, and the air became so impure and obnoxious that great suffering and finally death would result to any person remaining therein. That thereupon this plaintiff and many other employees of the defendants ceased working for the defendants herein, quit their said employment and place of employment, and sought to make their escape from the said mine; that said shaft at said time was so full of fire, smoke, and gas that no person could pass through the same. That after ceasing their said employment, and while not in the employment of the defendants above named, this plaintiff and the other said employees sought to make their escape from the said mine through the aforementioned passageway on the 2,400 foot level through the aforementioned High Ore mine. That because of the carelessness and negligence of the defendants herein, and especially because of the negligence of the said defendants in failing and neglecting to provide plaintiff with more than one means of exit from the said mine, to-wit, the Granite Mountain shaft, and because the defendants carelessly and negligently caused and permitted a fire to be started and to continue to burn in said shaft, and carelessly and negligently failed and neglected to inform plaintiff of any other means of exit from said mine except through the said Granite Mountain shaft, this plaintiff could not and did not pass out of said mine, and was compelled to remain therein for a period of about forty hours,

and that during all of said time the whole of said mine, and especially the said passageway where the plaintiff was, became filled with smoke, gas, and heat, and the said air became impure and obnoxious, all causing the plaintiff the most intense pain."

As an affirmative defense to this complaint, the defendants alleged that the plaintiff, as an employee of the defendant mining company, was engaged in the conduct of its mining operations underground in the Speculator mine "during all of the times of the happenings mentioned and set forth in the complaint"; that both the plaintiff and the defendant mining company were bound by the Workmen's Compensation Act of Montana, and that the remedy provided for therein is exclusive. Later a stipulation was entered into between the plaintiff and the defendants, admitting facts to the effect that the defendant mining company had taken the various steps necessary to come under the Compensation Act.

Plaintiff urges that the relation of master and servant did not exist at the time of the accident, and now insists that the injuries sustained by him did not arise out of and in the course of his employment in the mine. The stipulation of facts and the pleadings show that the defendant mining company took the requisite steps to bring itself within the provisions of the Compensation Act, and if the relation of master and servant existed between the plaintiff and the defendant mining company at the time of the accident, and if the accident and the injury resulting therefrom arose out of and in the course of plaintiff's employment, then it is conceded that the remedy provided by the Compensation Act is exclusive.

That the Compensation Act of this state, in so far as it [1] provides compensation to an injured employee for injuries received from an accident growing out of and in the course of his employment is exclusive of all other remedies, is unquestionable. (Secs. 2838 and 2839, Rev. Codes 1921; *Hyett* v. *Northwestern Hospital for Women and Children*, 147 Minn. 413, 180 N. W. 552.) The plaintiff seeks to avoid this defense by asserting that he was not employed by the defend-

ant mining company at the time he was injured, and that his injuries did not arise out of and were not received in the course of his employment. The decisive questions, then, are: Did the relation of master and servant exist between the plaintiff and the defendant mining company at the time plaintiff sustained the injuries complained of, and did these injuries arise out of and in the course of plaintiff's employment?

Plaintiff urges that when the fire started "thereupon this [2] plaintiff and many other employees of the defendant ceased working for the defendant herein, quit their said employment and place of employment, and sought to make their escape from the said mine," and that plaintiff thereafter was no longer in the employ of the defendant mining company, and that therefore the injuries sustained by him by reason of the gas and smoke due to his inability to pass out of the mine did not arise out of and in the course of any employment with the defendant mining company. It is alleged that because of plaintiff's inability to pass out of the mine, he was compelled to remain therein for a period of about forty hours, during which time he sustained the injuries complained of because of the gas and smoke due to the fire. If we correctly understand plaintiff's contention in this court, he urges that because of this he was, against his will, compelled to labor for a longer period than eight hours in violation of law; that the relation of master and servant was terminated by plaintiff because of the willful breach of duty on the part of the mining company to provide another means of exit in case of a fire, and that his subsequent detention in the mine amounted to an unlawful imprisonment; and that it became the duty of the company to have hoisted him to the top at the end of eight hours from the time he commenced his labors, or at least to have provided him such facilities that he himself could have gotten to the top. The inconsistency of plaintiff's contentions in these respects must be obvious. He says, first, that when the fire started, he "thereupon ceased working for the defendant," but he does not say when the fire started. There

is not any word in the record from which it can be told at
what hour the fire started, or when the plaintiff was required
to seek safety because of the fire. We understand it to be
conceded, however, that the fire started while the plaintiff
was at work, for it is stated in plaintiff's brief "that while he
was at work in said mine a fire started and burned in said
shaft and mine." In fact, the fair, logical inference from
the pleadings is that the fire occurred within the eight-hour
period during which the plaintiff was working at mining. If
it was within the eight-hour period, then, when he quit the
defendant's employment (assuming for the time being and for
this purpose that he did quit defendant's employment, and
that thereafter, as between the plaintiff and the mining com-
pany, the relation of master and servant did not exist),
the nature of the defendant mining company's duties and
obligations to the plaintiff were not the same as therefore,
if the relation of master and servant ceased to exist, if ter-
minated at all, the defendant mining company did not owe to
the plaintiff the obligations that a master owes to an employee,
because he would have been "a stranger, to whom the master,
as such, owes no duty whatever, except such as he must observe
toward any other stranger under the social compact." (*Moyse
v. Northern Pac. R. Co.,* 41 Mont. 272, 108 Pac. 1062.) The
argument made that after he was in the mine for eight hours
[3] his further detention therein amounted to a false imprison-
ment by the mining company cannot be urged because the
plaintiff's complaint is entirely predicated upon the relation of
master and servant, and upon the duties and obligations owed
by the company, as master, to the plaintiff, as its servant, and
in particular the failure and neglect of the master's duty to
provide the plaintiff with more than one means of exit from
the mine.

Plaintiff's counsel make some contention that because plain-
tiff was detained in the mine for forty hours or more, there
was a violation by the defendant mining company of the eight-
hour law (sec. 3071, Rev. Codes 1921), but the argument is

without merit.   This law was not intended to, and in fact did not, change the duties or liabilities of either the employer or employee.   The word "employment," as used in the Workmen's Compensation Act, does not have reference alone to actual manual or physical labor, but to the whole period of time or sphere of activities, regardless of whether the employee is actually engaged in doing the thing he was employed to do. (*Moyse* v. *Northern Pac. Ry. Co., supra.*)

Plaintiff cannot be heard to say in this case that he severed the relation of master and servant, as between himself and the defendant company, upon the starting of the fire.   To say that plaintiff "ceased" working for the defendant is not equivalent to saying that he severed the relation of employer and employee.   It is only a legal conclusion.   Neither are the words "quit the said employment and place of employment" subject to such a construction as is apparently contended for. As used, this language would seem to mean only that plaintiff, when the fire started, quit doing that thing which he had theretofore been doing, in order to seek a place of safety. The relation of master and servant is a contractual one, and cannot be terminated in such a manner and without notice so as to change the relation and the resulting obligations. (Sec. 7789, Rev. Codes 1921.)   Counsel for plaintiff cite and apparently rely on section 7791, Revised Codes of 1921, but its provisions are not applicable for the reasons hereinafter stated.

The complaint is to be taken as a whole and in its entirety, and as such it shows that the relation of master and servant did exist at the time of the employment.   If the plaintiff could thus change the status of the relations theretofore existing, and create new and different obligations on the part of the former employer, then, by the same token, the defendant could do likewise.   Certainly, under no theory of justice or legal reasoning could an employer be heard to say to an employee, when an accident was threatening the employee's safety, that the employee was discharged so that the employer might

escape his obligations.  If the employer could not do this, then by the same force of reasoning the employee could not.

The test to be applied to determine whether the plaintiff [4] and the defendant mining company are subject to the Workmen's Compensation Act is, in our opinion, whether the plaintiff himself, upon the record before this court, could enforce liability against the defendant under this Act for the injuries received by him.  If the defendant mining company would be bound by the Compensation Act, then the plaintiff is likewise bound.  In applying the law to the facts, it must always be kept in mind that we are dealing with a state policy of social insurance in which some of the previously well-settled legal principles governing causes of negligence have no abiding place.  (*Newark Hair & Bi-Products Co.* v. *Feldman,* 89 N. J. L. 504, 99 Atl. 602), and the law is to be given a liberal construction (sec. 2964, Rev. Codes 1921).

To create a liability on the part of the defendant mining [5, 6] company under the Workmen's Compensation Act, three things must appear: (1) That there was an industrial accident causing the injuries complained of; (2) that the accident arose out of plaintiff's employment; and (3) that it arose in the course of plaintiff's employment.  (*Wiggins* v. *Industrial Acc. Board,* 54 Mont. 335, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9.)  That there was an accident is conceded, although it is to be remembered that the compensation provided for in the Act is in no sense to be considered as damages for the injured employee or to his dependents in case death supervenes, but as compensation for the injuries received.  (*Lewis & Clark Co.* v. *Industrial Acc. Board,* 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.)

While in determining whether an accident arises out of and [7] in the course of an employment each case is to be decided with reference to its own attendant circumstances, still there are now well-established principles, derived from a well-considered line of authorities, which aid in the application of the law to a given state of facts.  In the early history of the

development of the workmen's compensation law in this and in other countries, and, indeed, until quite recently, it was frequently stated that argument by analogy was valueless. (*Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124.) Courts have so frequently, however, in recent years construed workmen's compensation legislative enactments, and so many cases have been before the state industrial accident boards of the several states having such laws, that certain principles and rules in the construction, interpretation and application of the law may now be considered as fairly well-established.

The terms "arising out of" and "in the course of" the employment are used conjunctively, and in order to satisfy the statute both conditions must concur. In the case of *Wiggins* v. *Industrial Acc. Board, supra,* this court, speaking through Mr. Justice Holloway, said: "The words 'out of' point to the origin or cause of the accident and are descriptive of the relation which the injury bears to the employment. * * * If, by reason of the nature of the employment itself or the particular conditions under which the employment is pursued, the workman is exposed to a hazard peculiar to the employment under the circumstances, and injury results by reason of such exposure, then it may be said fairly that the injury arises out of the employment, or, stated in different terms, the workman must have been exposed by his employment to more than the normal risk to which the people of the community generally are subject, in order that his injury can be said to arise out of his employment."

The words "in the course of an employment" refer to the time, place and circumstances under which the accident took place, and an accident arises "in the course of the employment" if it occurs while the employee is doing the duty which he is employed to perform. (*McNicol* v. *Patterson Wilde & Co.*, 215 Mass. 497, L. R. A. 1916A, 306, 102 N. E. 697, note, 4 N. C. C. A. 522.) The supreme court of New Jersey, in the case of *Bryant* v. *Fissell,* 84 N. J. L. 72, 86 Atl. 458, said: "An accident arises 'in the course of the employment' if it occurs while the employee is doing what a man so employed

may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time."

It may now be stated, as a general rule, as gathered from a long line of decisions, both American and English, that an accident arises out of an employment if the employee has reached his employer's premises on his way to work or is still on his employer's premises on his way home. (Schneider's Workmen's Compensation Law, sec. 268.) An examination of the many cases decided by the courts and industrial accident boards in this and in other countries discloses that there are but few exceptions to the rule that the employer and employee are within the provisions of the workmen's compensation law when the employee is upon the employer's premises, whether engaged in some line of duty connected with his employment or in going to and from his employment. The rule has been applied to cases of an employee employed in a mine, and it has been frequently held that the obligation of the employer does not cease toward the employee until after the employee has been brought to the surface. (*Sedlock* v. *Carr Coal Min. & Mfg. Co.*, 98 Kan. 680, L. R. A. 1917B, 372, 159 Pac. 9, 15 N. C. C. A. 237; *Moury* v. *Latham Coal & Mining Co.*, 212 Ill. App. 508, 18 N. C. C. A. 1034; *Chance* v. *Reliance Coal & Mining Co.*, 108 Kan. 121, 193 Pac. 889; *Sneddon* v. *Greenfield Coal & Brick Co.*, 47 Scotch L. R. 337, 3 B. W. C. C. 557; *Brooklyn Mining Co.* v. *Industrial Acc. Com.*, 172 Cal. 774, 159 Pac. 162.)

Applying these principles to the facts of this case, it must be apparent that the injuries sustained by the plaintiff were caused by (a) an industrial accident, (b) arising out of and (c) in the course of plaintiff's employment in the Speculator mine.

The cause of the fire is not disclosed by the record, and is immaterial. (*Lewis & Clark Co.* v. *Industrial Acc. Board, supra.*) However, the complaint alleges that the defendants "carelessly and negligently caused and permitted a fire to be started." It is also alleged that there was a failure on the part of the defendant mining company to provide suitable

exits from the mine in case of a fire. By reason of the fire and plaintiff's inability to leave the mine on account of insufficient exits, the smoke and gas from the fire caused plaintiff the injuries for which he seeks to recover damages in this action. There was an accident within the meaning of the statute, causing these injuries. The accident causing these injuries was the negligent setting on fire of the mine together with the defendant mining company's negligence in failing to provide sufficient means of egress from the mine in case of a fire.

Fire in a mine is a result that may occur from various causes at any time—it is one of the hazards of the employment—and while the plaintiff was actually engaged in his work in the Speculator mine, a fire did occur. Except for his employment, plaintiff would not have been in the mine at the time of the fire. Except for his employment, it was immaterial to him whether there was a means of egress from the mine other than through the Granite Mountain shaft which could not be used by reason of the fire, or whether the defendant company was negligent in failing to provide another means of exit. At the time the fire actually occurred he was in the performance of the work which he was employed to do. Because of the fire he was obliged to cease doing the thing he was then doing, and seek safety. He could not leave the mine by way of the Granite Mountain shaft by reason of the fire, and he tried the passageway through the High Ore mine, which he had assumed was open, but he found it bulkheaded and closed with concrete, and, there being no other means of exit from the mine, he and his fellow-employees were detained in the mine, and sustained injuries and damage. Even though plaintiff had actually ceased doing that thing which he was employed to do, he was still within the sphere of his employment.

Not only is it a matter of common knowledge that fires in mines do occur from various causes as a natural incident of the work, but it is likewise true that through negligence or otherwise sufficient means of exit from mines are sometimes not

provided in case of a fire. That injuries or often death may result by reason of being "trapped" or "entombed" in a mine is to be contemplated by a reasonable person familiar with the methods of mining as a result of the exposure occasioned by the nature of the employment—a danger peculiar to the work—incidental to the character of the business to be carried on. There is a causal connection between the conditions under which the work was required to be performed and the resultant injuries. The injuries had their "origin in a risk connected with the employment, and  *  *  *  flowed from that source as a rational consequence." (*McNicol* v. *Patterson Wilde & Co., supra.*)

The court is of the opinion that both the plaintiff and the defendant mining company are bound by the workmen's compensation law of this state, which is exclusive of all other remedies, and that compensation to the plaintiff for the injuries sustained by him due to the accident complained of must be under the terms of that Act and not otherwise. For this court to hold that the plaintiff in this case could not enforce payment of compensation to him under the provisions of the Workmen's Compensation Act of this state, if the position of the parties were reversed, would, in our opinion, be setting a precedent and declaring a principle which would tend to take from the injured employee in industrial pursuits the benefits and objects sought to be thereby secured.

The constitutionality of the Act is questioned by plaintiff's brief and argument, but nothing has been suggested thereby that has not been previously considered by this court, or to in any respect alter the views of this court heretofore expressed in *Lewis & Clark Co.* v. *Industrial Acc. Board, supra,* and in *Willis* v. *Pilot Butte Mining Co., supra.*

There being no error in the record, the order denying plaintiff's motion for a new trial is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.

Rehearing denied November 4, 1922.