**AMERICAN MUT. LIABILITY INS. CO. v. PARKER et ux.**

No. 6164.

Court of Civil Appeals of Texas. Texarkana.

May 23, 1945.

Rehearing Denied June 7, 1945.

Fred K. Newberry and O. H. Atchley, both of Texarkana, for appellant.

Wm. V. Brown, of Texarkana, for appellees.

HARVEY, Justice.

This is an appeal from a judgment rendered by the District Court of Bowie County, Texas, upon a jury verdict, in favor of appellees who brought suit against the appellant under the provisions of the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., by reason of the death of their son, James L. Parker, who was killed on April 28, 1944, while on the premises of his employer, and allegedly in the course of his employment by the Lone Star Defense Corporation. The defense presented on the trial, and now raised by this appeal, was that the employee at the time of the accident that occasioned his death was not in the course of his employment nor engaged in the furtherance of his employer's business.

James L. Parker, an employee of the Lone Star Defense Corporation, had reported for work on the premises of his employer about 3:30 o'clock p. m., on April 28, 1944, his hours of duty being from 4:00 o'clock in the afternoon until midnight. While he and a number of other workers were waiting in the customary assembly place just in front of the office where they clocked in to work, the safety man for the corporation told him and another employee by the name of B. G. Clayton that they would have to get their worn safety heels replaced before going to work that day. In compliance with his requirement, they drove to Texarkana in Parker's car to have new safety heels placed on their shoes. While they were in Texarkana Parker left his car at a repair shop for some type of work to be done on it. They were somewhat delayed in returning to work, the evidence not disclosing whether or not it was due to the wait for the repairs to the car to be made, car trouble on the way back, or to some other cause. After entering the employer's premises and while traveling the usual course to the place where they checked in for work, and when about two hundred yards therefrom, their car was struck by a train and Parker was fatally injured. The evidence shows that Parker carried several other employees that worked on the same shift as he to and from their work daily, for which they paid him a stipulated amount. The accident occurred shortly before midnight, the litigants differing in their views as to the exact time, and the evidence relating thereto will be referred to by us hereinafter in detail.

The question before us for determination is whether or not the facts adduced upon the trial were sufficient upon which to predicate the jury finding that at

the time Parker sustained his fatal injuries he was engaged in the course of his employment. In a discussion of this proposition it is pertinent to refer to another jury finding to the effect that from the time Parker left the guardhouse at the gate to the employer's premises to the place of the collision with the train, he had and maintained an intention to work the remainder of his shift that day. Whether or not he was in the course of his employment, and whether he intended to go to work on the occasion in question, were, of course, fact issues for the jury to decide; whether or not there is insufficient evidence upon which to base a jury verdict is a question of law. The testimony shows that Parker reported for work on the day of the accident, and while waiting to clock in he was told that he could not do so until he should have safety heels placed on his shoes. He traveled to Texarkana for that purpose; he left his car at a garage for repairs, but did not get the desired work done, because, as he stated on the return trip, he didn't have time to wait as he had to go to work. Too, he told Clayton that he wanted "to get back out there and work some." In addition, he told Clayton that he had riders to carry home. The evidence further shows that an employee at the plant was paid for the time actually put in and that Parker could have gone to work at any time up to the end of his shift at midnight. It was agreed between the parties to the suit that if J. E. Ponder, the switchman on the train involved in the collision, were present on the trial he would testify that the accident occurred at approximately 11:55 p. m.; B. G. Clayton testified that he did not know the time of the accident but that he imagined it was around eleven o'clock. Neither Parker nor Clayton had a watch with them on the date under discussion; upon their entrance into the premises, Parker stopped his car to inquire of the guard what time it was, and upon returning to the car said, "Let's go." The record does not reflect what he was told by the guard the time was.

The position of appellant is that under the circumstances just above set out there is a valid inference to be drawn from them that Parker entered the employer's premises for the purpose of picking up the employees who were his passengers to and from work, which inference is equally as valid, or more so, than the theory that he was intending to go to work. Our view of the matter is that there is no inconsistency in the inferences referred to by appellant. Parker might well have had an intention to work the time remaining on his shift, and also have had in mind the fact that he had passengers to carry home when the shift was changed. He was paid by the hour, at a rate which was not inconsequential, and it is not unreasonable from the evidence before us to assume that he desired to work for whatever time was left of his shift that night. The jury had sufficient facts before them upon which to base their finding that Parker had an intention of working at the time he was struck by the train.

 It is well established as a legal principle that the burden is upon a claimant under the Workmen's Compensation Law to prove by a preponderance of the evidence that the loss or injury to an employee originated in the work or business of his employer and that the injuries were received while the employee was engaged in or about the furtherance of the affairs of the employer. Equally true it is that an employee is protected under the statute if he is injured on the employer's premises while going to or from his work. Wynn v. Southern Surety Co., Tex.Civ.App., 26 S.W.2d 691, and cases cited. Also, if the employee is engaged in a dual mission, that is, one personal to himself as well as on behalf of the employer, he still is considered in the course of his employment. Liberty Mutual Ins. Co. v. Boggs, Tex.Civ. App., 66 S.W.2d 787. Courts quite uniformly follow liberal rules of construction in order to effectuate the beneficent purposes for which the Workmen's Compensation Acts in various jurisdiction were passed. In line with this policy, under numerous fact situations the employee has been held to be in the course of his employment, or that the injury originated in the business of the employer, although the employee was not actually engaged in the performance of his duties, when there was some causal connection indicated between his employment and the thing he was doing at the moment of the injury. To illustrate, one was held in the course of his employment while returning to work after his noon meal and was injured at a railroad crossing off the employer's premises, Lumbermen's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; an injury was held compensable where the employee, after the day's work

was over was injured while cranking a car belonging to another employee by whom he was to be transported home, Petroleum Casualty Co. v. Green, Tex.Civ.App., 11 S.W.2d 338; another workman was considered within the protection of the statute when he was killed by another party while on an adjoining tract of land with the intention of hunting wolves, Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W.2d 425. The general rule as to when an accident arises out of one's employment is stated in the case of Wirta v. North Butte Mining Co., 64 Mont. 279, 210 P. 332, 336, 30 A.L.R. 964, as follows:

"It may now be stated, as a general rule, as gathered from a long line of decisions, both American and English, that an accident arises out of an employment if the employé has reached his employer's premises on his way to work or is still on his employer's premises on his way home. * * * An examination of the many cases decided by the courts and Industrial Accident Boards in this and in other countries discloses that there are but few exceptions to the rule that the employer and employé are within the provisions of the Workmen's Compensation Law when the employé is upon the employer's premises, whether engaged in some line of duty connected with his employment or in going to and from his employment."

In the case of United Dredging Co. v. Lindberg, 5 Cir., 18 F.2d 453, 455, it was held that: "It is immaterial that at the moment of death he was not in the actual performance of his duty. An employee is deemed to be acting in the course of his employment whenever he is present and ready to obey orders, although, even for purposes of his own, he has temporarily ceased his work."

 In the instant case the employee was on his way to work, or had an intention to work, as found by the jury, and on the employer's premises at the time of his fatal injury. Even though it be conceded that had he arrived at the point where he was to begin work there would have remained so little time on his shift that it would have been impractical for him to have gone to work, we are of the opinion that under the facts of this case he came within the terms of the statute. An employee who with the intention of going to work, even though laboring under a mistake of fact as to whether or not he could perform his duties upon his arrival at the customary place of their performance, is injured on the employer's premises while proceeding to his work, in our judgment comes within the purview of the statute and is entitled to its benefits. A somewhat similar situation would have existed if he had arrived at his work and had been informed that his shift was not working, due to a shortage of materials, and had been injured while leaving the premises. He would have sustained such injury while engaged in or about the furtherance of the affairs of the employer.

 A new trial is sought by reason of the alleged perjury of B. G. Clayton, a witness for the plaintiffs below. The record shows that while he was testifying he was asked by the defendant's attorney if he didn't have a claim for compensation, and if he had hired lawyers to represent him, to which he replied that he had not done anything yet. Then he was asked if he had hired lawyers and he answered in the negative, but stated that his brother had talked to some and had sent him word to come down, the witness not saying where he meant, and that he had done so. The inquiry was abandoned at this point. The trial was had on November 13, 1944. Copies of a claim for compensation made by the witness and notice of injury and an affidavit by him filed with the Industrial Accident Board prior to the trial were introduced by the defendant at the time of the presentation of its motion for a new trial. We do not think these facts constituted perjury or bad faith. The witness said he had talked to lawyers but had not hired them. It could not be expected, in the form which the questions were asked, that one unacquainted with the mechanics of filing a notice of injury and a claim for compensation should have replied otherwise. Quite evidently he answered the questions as he understood them and did not associate the signing of some sort of formal notice and claim with the act of hiring lawyers or taking court action.

 We think, too, that the evidence was sufficient to show that there was an employee of the same or similar class as the deceased employee who had worked substantially the whole of the year next preceding the date of the accident, and his rate of pay. B. G. Clayton testified that he had been working at the plant for about two years and had missed several days at times when the plant was shut down by reason of lack of material; that Parker did

the same kind of work that he did and their pay checks were the same.

There being no error presented on appeal, the judgment of the trial court is affirmed.