AMERICAN MUTUAL LIABILITY INSURANCE COMPANY V.
B. F. PARKER ET UX.

No. A-641. Decided December 12, 1945.
Rehearing overruled January 23, 1946.
(191 S. W., 2d Series, 844.)

*Wheeler & Atchley,* of Texarkana, for petitioner.

The evidence will not support a conclusion that James L. Parker, the deceased, was reporting for work or engaged in the course of his employment at the time he received his injuries, and it was error for the Court of Civil Appeals to sustain the trial court's refusal to instruct a verdict for the defendant insurance company. The only reasonable inference or conclusion to be drawn from the evidence being that at the time he met his death he was engaged solely upon a personal mission of his own, and not engaged in the furtherance of his employment. Joske v.

Irvine, 91 Texas 574, 44 S. W. 1059; Phenix Dairy v. White, 169 S. W. (2d) 492; Aetna Life Ins. Co. v. Graham, 284 S. W. 931.

*William V. Brown,* of Texarkana, for resepondents.

The trial court and the Court of Civil Appeals did not err in their rulings overruling insurance company's motion for judgment non obstante veredicto, as there was ample and sufficient evidence to warrant the jury in finding that deceased was in the course of his employment and in the furtherance of his employer's business at the time of the accident. Texas Emp. Ins. Assn. v. Boecker, 53 S. W. (2d) 327; Bountiful Brick Co. v. Giles, 276 U. S. 154, 72 L. Ed. 66; Texas Emp. Ins. Assn. v. Anderson, 125 S. W. (2d) 674.

MR. JUSTICE HICKMAN delivered the opinion of the Court.

This is an action brought by B. F. Parker and wife, Anice Parker, for compensation on account of the death of their son, James L. Parker, an employee of Lone Star Defense Corporation. The controlling question is whether or not the jury's finding that the deceased was in the course of his employment when he sustained the injuries resulting in his death is supported by any evidence. The trial court rendered judgment in favor of the parents against petitioner, the compensation carrier, based upon the jury's finding and the case was affirmed by the Court of Civil Appeals. 188 S. W. (2d) 1006.

The deceased was twenty-three years of age at the time of his death and lived with his parents in the neighborhood of Maud. Just how far he lived from the plant of his employer is not shown by the record. Lone Star Defense Corporation was engaged in the manufacture of munitions and deceased was employed as an explosive operator. He worked on what was known as the swing shift, from 4 P. M., to 12 midnight, at a wage of eighty cents per hour. The area covered by the defense plant is not shown by the record, but enough is shown to disclose that it was several square miles. The premises were enclosed by a fence and entrance thereto was obtained only through gates at which guards were stationed to check indentification badges. Parker, as an employee, had been issued an identification badge which entitled him to be admitted to the premises. Persons without identification badges were not admitted. Parker drove his own car and, by arrangements with other employees, he transported some of them who worked on the swing shift to and from their work daily, for which services they each paid

him $3.00 per week. He delivered his riders to the areas where they worked shortly before 4 o'clock each afternoon and picked them up shortly after midnight. On the date he sustained the fatal injuries, Parker reported for work at the usual time, but did not clock in because a safety man employed at the plant told him that he must have safety heels put on his shoes before he could go to work that day. He then, in company with another employee who was also required to have safety heels put on his shoes, drove to Texarkana, a distance of about fifteen miles, for the purpose of meeting this requirement. The two left the entrance to the premises of their employer at about 4 o'clock P. M., and each of them had safety heels put on his shoes at Texarkana. Parker also took his car to a garage for the purpose of having some repairs made thereto.

Upon returning to the entrance gate to the employer's premises Parker left his car and asked a guard what time it was. The guard's reply is not known. It is inferable that at that time Parker intended to work the remainder of the shift, if sufficient time remained to justify it, but upon learning what time it was, instead of entering the premises to go to work, he went into the guard house at the entrance gate and remained there for 20 or 25 minutes. He then entered the employer's premises and was driving toward the place where he was to pick up his riders when he was killed by a collision between his car and a train operated by his employer on its own premises in connection with its business as a manufacturer.

Much of the application for writ of error is given over to a discussion of the question of whether there was any evidence that Parker, at the time he received his injuries, was on his way to resume work for the balance of the shift. We adopt the view of petitioner that there is no substantial evidence in the record lending any reasonable support to that conclusion. There is some evidence that while on his return from Texarkana he intended to work, if sufficient time remained to justify it, but no evidence that he still entertained that intention after learning the time of day from the guard. Our decision will be based upon the theory of the petitioner, that at the time of the collision Parker was on his way to pick up the employees who rode with him to work that day and whose day's work ended at midnight. The question, thus narrowed down, is whether or not Parker was in the course of his employment while crossing the premises of his employer for that particular purpose.

The term "injury sustained in the course of employment" is defined in Art. 8309, Vernon's Statutes. The definition excludes

certain injuries and then provides that the term "* * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affair or business of his employer whether upon the employer's premises or elsewhere." It is apparent from the very nature of the definition that no exact formula can be prescribed which will automatically solve every case. Whether or not a given accident is so intimately related to the employment as to come within the definition must necessarily depend upon its own particular facts and circumstances, but in applying the definition to the facts of this particular case, we are not left without valuable guides. This court has considered many cases based upon facts similar to the facts of this case and, by following the reasoning employed in deciding those cases, the certain conclusion is drawn that the deceased at the time he sustained his injuries came within the terms of the definition.

■ The salient facts in this case are: The deceased was a regular employee of the Lone Star Defense Corporation; he sustained the injuries resulting in his death on the premises of his employer through a hazard to which his employment daily exposed him; the particular crossing at which the train struck his car was used only by employees; the employer provided no place of residence for its employees and the transportation of the employees to and from the premises of the employer and to and from the particular areas in which they worked was in the interest of the employer; on the day of the injuries the deceased appeared with his riders for the purpose of performing his customary day's work, but was denied the right to go to work because his shoes were not equipped with safety heels; his trip to Texarkana was for the purpose of having safety heels put on his shoes and when he returned properly equipped he was admitted upon the premises because he was an employee; in traveling across the premises of his employer to pick up the riders at the end of their shift, he was working in the interest of his employer. These facts constitute substantial evidence in support of the jury's finding that deceased sustained his fatal injuries while in the course of his employment.

The following cases, selected because of the similarity of the facts involved and the applicability of the principles discussed, are thought to govern this case and support the conclusion above announced. Lumberman's Reciprocal Ass'n v. Behnken, 112 Texas 103, 246 S. W. 72; Kirby Lumber Company v. Scurlock, 112 Texas 115, 246 S. W. 76; Federal Surety Co.,

v. Ragle (Comm. of Apps.) 40 S. W. (2d) 63; Liberty Mutual Ins. Co. v. Nelson 142 Texas 370, 178 S. W. (2d) 514; Petroleum Casualty Company v. Green, 11 S. W. (2d) 388, error refused. Since those cases are readily available to all members of the bench and bar of this jurisdiction, no necessity is perceived for discussing them in detail. In the Behnken case, an employee was killed during the noon hour by a train on a crossing between his residence and the place where he worked. The train was operated by a railroad company and not by his employer, but it was held that the hazard to which he was exposed was one arising out of his employment, it not being one to which the public was exposed. In the Scurlock case the employee reported for work on the day of the accident, but the mill at which he worked was idle that day. He was employed by the day but performed no service on that particular day. His practice had been to travel by velocipede to and from his work on his employer's track. On the day when the mill was shut down, while traveling homeward on his velocipede, he was killed by a log train operated by his employer. In the Ragle case, as here, several employees rode in the same car to and from their work. One of the riders, not the owner of the car, was injured on employer's premises while cranking his co-employee's automobile preparatory to leaving at the end of a day's work. The employees provided their own means of transportation and at the time of the injury the day's work had been completed. In the Green case, the facts were substantially the same as in the Ragle case. In each of these cases, it was held that the injuries were sustained while the employee was in the course of his employment. In the Nelson case, upon facts much less compelling than those of the instant case, it was held that the employee was acting within the course of his employment at the time he received fatal injuries. Nelson was a painter foreman for a steel construction company. He worked in Texas City and received compensation by the hour only when at work on his employer's premises. Without being instructed to do so by his employer, Nelson took his own car and on his own time drove to Houston for the purpose, in part, of purchasing some paint brushes and other supplies needed on the job. On a public street in Houston he lost his life as a result of injuries received in an automobile collision and this court held that his beneficiaries were entitled to compensation.

Turning again to the facts of the instant case. Suppose that Parker had been denied work on the day of his injury because the plant was shut down for some reason after he entered the premises. It could hardly be contended, in the light of the holding in the Scurlock case, supra, that he was not in the course

of his employment. Or suppose on the occasion in question he had picked up his riders and one or more of them had been injured in the same manner that he was injured. It could hardly be contended in the light of the Ragle and Green cases, supra, that such employees were not protected by compensation insurance. It would be strange reasoning to conclude that all occupants of the car except Parker were covered by the policy. Or suppose further that Parker had worked for a few hours on the day of his injury, but because he was not feeling well or for some other valid reason he quit work before the end of the shift and remained on the premises for the sole purpose of picking up his riders at the end of the shift. It could not be contended, with reason, that the fact of the intervening of a period in which he was not actually laboring cut him off from his rights as an employee. Was he in any different relationship on the day of the accident from that in the supposed cases? We think not. In our view the deceased was as certainly within the course of his employment on this occasion as he would have been had he been denied work that day because of a shut-down by the company, or had he worked for a part of the shift and remained over for the sole purpose of picking up his riders. That which he was doing was in furtherance of the business of his employer, was incidental to his employment, and had a causal connection therewith. Certainly, it seems, the injuries to the deceased more clearly grew out of his employment than did those of the employee in the Nelson case, supra, particularly when it is considered that the latter was injured on a public street. To permit recovery in the cases cited and deny recovery in the instant case could hardly be justified in view of the uniform holding that the workmen's compensation law is a remedial statute which should be given a liberal construction in order to effectuate its evident purpose. Our conclusion is that the jury had substantial evidence upon which to base its finding that the deceased received his injuries while in the course of his employment.

There are other questions presented in the application, but they were considered and, in our opinion, correctly decided by the Court of Civil Appeals and no reason is perceived for a further discussion thereof. The case is affirmed.

Opinion delivered December 12, 1945.

MR. CHIEF JUSTICE ALEXANDER, concurring.

It is my opinion that if the deceased, who was regularly employed by the Lone Star Defense Corporation, went upon the

premises for the purpose of performing his regular duties for said employer and was injured while thus on the premises, as the evidence seems to indicate, then he was injured in the course of his employment within the meaning of the Workmen's Compensation Law, and the insurance carrier is liable, even though he did not actually go to work after entering the premises. He would be entitled to be protected while on the premises. But the majority opinion holds that in traveling across the premises to pick up the riders, the deceased was working in the interest of the Lone Star Defense Corporation, and seems to imply that this alone would entitle him to the protection of the Workmen's Compensation Law, even though he had not entered the premises for the purpose of working at his regular job. His duty to haul the other employees arose by virtue of a private contract between himself and the other employees. The Lone Star Defense Corporation had nothing to do with that contract. If his only purpose in entering the premises was to pick up the other employees, then he was not in the course of his employment as an employee of the Lone Star Defense Corporation at the time of his injury. I deem it proper thus to express my views on this subject lest my action in approving the majority opinion be misunderstood.

Opinion delivered December 12, 1945.

### ON REHEARING.

Petitioner takes the position in its motion for rehearing that we based our decision of this case upon a ground not pleaded by respondents in the trial court and upon a theory different from that upon which the trial was conducted. The specific criticism made of respondents' petition is not that it did not allege sufficient facts to support a recovery of compensation, under the law as announced in our opinion, but that it contained an additional allegation which the evidence did not sustain. This allegation was that at the time of the accident Parker was "reporting for work." The jury, in answer to a special issue, found that, from the time Parker left the guard house at the entrance of the gate until he sustained fatal injuries, he had and maintained the intention to work the remainder of the swing shift that day. It was our view that this answer had no reasonable support in the evidence and we therefore disregard it. In answer to another special issue, the jury found that Parker sustained the injuries while in the course of his employment. We affirmed the judgment below in his favor on that finding.

Respondents alleged all facts material to a recovery and then added an allegation of an immaterial fact. Likewise, the jury

answered all material issues in respondents' favor and then answered an immaterial one in accordance with their contention.

■ It is elementary that an appellate court should not decide a case upon a theory different from that upon which it was pleaded and tried, but to disregard an immaterial allegation of a petition and to disregard an answer of the jury to an immaterial issue as being surplusage is not a violation of that rule. The rule with regard to immaterial allegations in pleadings is stated in Collins v. Chipman, 95 S. W. 666, 673, error denied, in this language:

"* * * The rule is general, except as to allegations of essential description, that whatever may be alleged by the pleader as a cause of action or ground of defense, it is only necessary to prove such allegations as are necessary to constitute a cause of action or establish the defense. Whatever else is alleged is regarded as surplusage, and need not be proven. * * *"

See also Mike v. Leath, 26 S. W. (2d) 726; Texas & N. O. Ry. Co., v. New, 95 S. W. (2d) 170, 33 Tex. Jur. pp. 655-6, Section 198.

The rule is equally well settled that jury findings on immaterial issues may be disregarded. Miller v. Fenner, Beane, & Ungerleider, 89 S. W. (2d) 506, error dismissed; Crowley v. Chapman, 260 S. W. 231; Ferguson v. Kuehn, 246 S. W. 674.

Petitioner relies upon Safety Casualty Company v. Wright, 138 Tex. 492, 160 S. W. (2d) 238. The distinction between that case and the instant one seems clear. No question of immaterial allegations or immaterial findings was involved in that case. The opinion of this court on rehearing in that case discloses that the pleadings were insufficient to state any cause of action at all. The employee pleaded facts which, if established, would not have supported a judgment in his favor. He did not plead too much, but too little.

Motion for rehearing overruled.

Opinion delivered January 23, 1946.