NO. 07-04-0039-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 16, 2005

_____

FIRST UNITED BANK, DIMMITT, TEXAS,
SUCCESSOR TO SHADOW HILLS NATIONAL BANK, APPELLANT

V.

PANHANDLE PACKING AND GASKET, INC., INDIVIDUALLY AND
D/B/A ARROW BEARINGS AND INDUSTRIAL SUPPLY AND NAMMCO
FABRICATION AND LUBBOCK GASKET AND SUPPLY; AND
LONE STAR GASKET AND SUPPLY, INC., APPELLEES

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-513,275; HONORABLE J. BLAIR CHERRY, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

**OPINION**

First United Bank appeals the judgment of the trial court following a jury trial that

Panhandle Packing and Gasket, Inc.,[1] have and recover $294,974.13, plus prejudgment

_____

[1]Because the judgment makes the award of $294,974.13 to Panhandle Packing, to avoid confusion, we will refer to plaintiff/appellee as Panhandle Packing except as otherwise necessary.

interest and that Panhandle Packing and Gasket, Inc., individually and d/b/a Arrow Bearings and Industrial Supply, Nammco Fabrication, Lubbock Gasket and Supply and Lone Star Gasket and Supply, Inc. recover attorney's fees in the amount of $45,000 and $10,000 and $7,000, respectively, for appeals to the Court of Appeals and the Supreme Court of Texas. Presenting six issues, First United contends (1) it was not liable to its corporate depositor for breach of contract by cashing checks payable to the depositor and endorsed in blank by the depositor's bookkeeper, (2) it was not liable to its corporate depositor for conversion by cashing checks payable to the depositor and endorsed in blank by the depositor's bookkeeper, (3) it was not liable to its corporate depositor for negligence in cashing 476 checks endorsed in blank by the corporate bookkeeper over an eight-year period, (4) the trial court erred in submitting the question of damages in one broad-form question because the appropriate statutes of limitation and the award of attorney's fees applicable to the three theories of liability cannot be determined, (5) the trial court erred in admitting evidence by an expert witness because his testimony was based on an unreliable foundation, and (6) the trial court erred in denying it dollar-for-dollar credit of the amount the depositor was paid by the bookkeeper per court-ordered restitution. We reverse and render in part and reverse and remand in part.

Panhandle Packing is a Texas corporation doing business as Arrow Bearings and Industrial Supply, Nammco Fabrication, and Lubbock Gasket and Supply. Also, Lubbock Gasket and Supply is the owner of all the stock of Lone Star, a corporation. The corporations are affiliated and have common stock ownership, but Lubbock Gasket acts

2

as the parent corporation.[2]  At all times material here, Betty Kimbrell worked for Panhandle

Packing as bookkeeper for the firms that maintained business deposit accounts.  By its live

pleading, among other matters, Panhandle Packing alleged:

- As a normal part of its financial business, Lubbock Gasket would pay and advance funds to the Internal Revenue Service and other governmental taxing entities on behalf of itself and its other subsidiaries or divisions to pay taxes and other items owed based on the payroll of employees.  In turn, each of these subsidiaries or divisions would write a check payable to Lubbock Gasket, drawn on the respective subsidiary's or division's own bank account at First United and sometimes at other financial institutions.  The checks would be made out to Lubbock Gasket for deposit in Lubbock Gasket's account as reimbursement for the taxes paid.

- The reimbursement transaction was primarily handled by one of Lubbock Gasket's employees, Betty Kimbrell.  Unknown to Plaintiffs, Betty Kimbrell would take the reimbursement checks to First United and instead of depositing the checks at First United and into the account of Lubbock Gasket, as she was instructed to do, Betty Kimbrell would obtain cash from the tellers at First United and then use that cash to her own benefit.

- Since 1993, First United allowed Betty Kimbrell to cash checks made payable to Lubbock Gasket and endorsed by Lubbock Gasket.  As a result of . . . and due to the actions of First United, Plaintiffs have sustained damages in the amount of $676,776.09.

The foregoing allegations were not pled in the alternative; thus, they constitute judicial

admissions and were conclusively established in the case without the introduction of the

---

[2]According to the judgment, Panhandle Packing and Gasket, Inc. is to recover $361,565.55 including interest from First United, but Panhandle Packing and Gasket, Inc., individually and d/b/a Arrow Bearings and Industrial Supply, Nammco Fabrication, Lubbock Gasket and Supply, and Lone Star Gasket and Supply are to recover only the attorney's fees awarded.  Notwithstanding the unexplained variation, for purposes of our analysis, the precise legal relationship among appellees is not controlling.

pleadings or presentation of other evidence. *See* Houston First American Sav. v. Musick, 650 S.W.2d 764, 767 (Tex. 1983). The endorsement on the checks did not contain any restriction, *i.e.,* "for deposit only" or otherwise.

Panhandle Packing did business under its own name and under the three assumed names. The embezzlement was not detected by Panhandle Packing, but was discovered when First United made inquiry about the authority of a maker on a check in 2000. A review of the records disclosed that beginning in 1993 and continuing until June 2000, the bookkeeper endorsed approximately 476 checks in blank and kept the cash proceeds totaling $676,776.09.

Seeking to recover its losses caused by the bookkeeper's embezzlement, Panhandle Packing filed suit against First United alleging breach of contract, conversion, violations of section 4.401 of the Texas Business and Commerce Code, and negligence. In addition to its general and specific denial that Panhandle Packing had not complied with all conditions precedent, First United pled the affirmative defenses of estoppel, the deposit agreement and corporate resolution, failure to satisfy conditions precedent, negligence of Panhandle Packing, comparative negligence, laches, good faith payment, payment, and multiple statutes of limitation.[3] Answering the 14 questions submitted, the jury found:

---

[3]By five special exceptions, First United asserted (1) the allegation of conversion failed to allege sufficient facts, (2) the petition did not state a specific amount of damages being sought, (3) the petition failed to identify the contract allegedly breached, (4) failure to satisfy conditions precedent, and (5) failure to plead sufficient facts regarding the bad faith claim. Because the record does not show that the exceptions were brought to the attention of the trial court, they present nothing for our review. *See* Tex. R. Civ. P. 90.

4

- the bookkeeper did not have authority to endorse the checks without restriction;

- First United sent a statement of accounts showing payment of items for the accounts from January 1993 through June 2000;

- Panhandle Packing gave First United notice that the endorsements in blank were unauthorized in June 2000;

- First United failed to comply with the deposit agreement,

- First United's failure to comply with the agreement was not excused;

- the negligence of First United and Panhandle Packing was a proximate cause of the occurrence;

- the jury allocated 49% negligence to First United and 51% to Panhandle Packing;

- First United failed to exercise good faith in paying cash to the bookkeeper;

- the bookkeeper was Panhandle Packing's agent;

- First United converted Panhandle Packing's property;

- First United wrongfully exercised dominion over Panhandle Packing's property;

- $294,974.13 compensates Panhandle Packing for damages resulting from First United's failure to comply, its negligence, or conversion; and

- $45,000 attorney's fees for the trial court, but none for appeals.

First United suggests that the question for our review is whether a loss resulting from embezzlement by an employee of a bank customer should be borne by the employer or the bank. Because an appeals court should not decide a case on a theory different from that on which it was pled and tried, we will consider the issue in the context of the theory on which the case was tried in the trial court and on issues that were preserved and presented for our review. American Mut. Liability Ins. v. Parker, 144 Tex. 453, 191 S.W.2d 844, 848 (1945); El Paso Environ. Systems v. Filtronics, 609 S.W.2d 810, 813 (Tex.Civ.App.--El Paso

5

1980, writ ref'd n.r.e.). Since issues one, two, and three present no evidence challenges before we commence our analysis, we first identify the appropriate standard of review when, as here, First United did not have the burden of proof at trial.

**Standard of Review**

In reviewing a no evidence contention, we consider only the evidence that tends to support the findings and disregard all evidence to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); Stedman v. Georgetown S. & L. Ass'n, 595 S.W.2d 486, 488 (Tex. 1979). When evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence and will not support a judgment. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, 755 (Tex. 1970). We consider only the evidence and inferences which can be drawn therefrom in the light most favorable to the jury's findings and disregard all contrary evidence and inferences. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993); Williams v. Gaines, 943 S.W.2d 185, 190 (Tex.App.--Amarillo 1997, writ denied). In addition, the trial court instructed the jury as follows:

> A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or hear the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

6

The mere fact that an incident happened, standing alone, does not permit the jury to draw the inference that the incident was caused by anyone's negligence.

Citing Dow Chemical Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001), First United contends that if its evidentiary challenges are sustained, we should proceed to examine the record to determine if the contrary proposition is established as a matter of law. However, the rule discussed in *Dow Chemical* does not apply here because First United did not have the burden of proof on the issues we will discuss.

**Conversion**

Addressing First United's issues in a logical rather than sequential order, we begin with issue two, by which it contends the evidence conclusively established it did not convert any instrument or engage in common law conversion as a matter of law. As suggested by its argument and presented by its motion for directed verdict, objections at the charge conference, and motion for judgment notwithstanding the verdict, we consider the issue as a no evidence challenge to the jury's answers to questions 11 and 12 by which it found that First United converted the checks. *See* Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 836 (Tex.App.--Amarillo 1993, writ denied). Because both parties are corporations, we first focus on the following instruction given by the trial court:

[w]hen a corporation is involved, of course, it may act only through natural persons as its agents or employees; and, in general, any agent or employee of a corporation may bind the corporation by his acts and declarations made while acting within the scope of his authority delegated to him by the

7

corporation, or within the scope of his duties as an employee of the corporation.

Panhandle Packing does not challenge the jury's finding to question 10 that the bookkeeper was Panhandle Packing's agent. Additionally, Panhandle Packing acknowledges the bookkeeper's agency status in its brief. Because it is undisputed that First United paid the face amount of the checks to the bookkeeper as agent upon her presentment, the law of principal and agent is applicable. In Shaw v. Kennedy, Ltd., 879 S.W.2d 240, 245 (Tex.App.--Amarillo 1994, no writ), we recognized the rule that what a principal does through an agent, he does himself. In Pfluger v. Colquitt, 620 S.W.2d 739, 743 (Tex.Civ.App.--Dallas 1981, writ ref'd n.r.e.), a conversion case, the court held that where the jury found that a third party was acting as the seller's agent, "the transaction had the same effect as if Pfluger had dealt personally with Colquitt because one who acts through a duly authorized agent is bound as if he had acted in person. *See also* Cash v. Lebowitz, 734 S.W.2d 396, 399 (Tex.App.--Dallas 1987, writ ref'd n.r.e.) (holding that payment to an agent had the same effect as payment directly to the principal and the agent's subsequent conversion of the money did not defeat the rights of the person making payment). These decisions conform to the court's instruction regarding corporate agents.

In the context of the definitions of conversion in question 11,[4] according to the judicial admissions, the bookkeeper was the person charged with the task of preparing checks and conducting necessary banking business to accomplish reimbursement to Lubbock Gasket and when checks were presented to First United, they were "endorsed by Lubbock Gasket." By question 12, the jury was asked whether First United wrongfully assumed and exercised dominion over Panhandle Packing's property. Applying the appropriate standard of review to the evidence which includes the judicial admission that the checks were "endorsed by Lubbock Gasket," we conclude there is no evidence to show the checks were paid on unauthorized endorsements or that payment was made to a person not entitled to endorse the instruments. Regarding question 12, we conclude there is no evidence to support the jury's findings that First United wrongfully assumed and exercised dominion over the checks. Issue two is sustained.

**Contract**

By its first issue, First United contends the bookkeeper had authority to endorse the checks and it had no contractual liability as a matter of law. As suggested by the argument, we also consider this a no evidence challenge to the jury's answers to questions 1, 5, and 9, by which it found the bookkeeper did not have authority to endorse the checks as she did,

---

[4]"Convert" for check presented by Betty Kimbrell prior to January 1, 1996, means an instrument is paid on an unauthorized indorsement. Then "convert" for checks presented after January 1, 1996, means a bank makes or obtains payment with respect to an instrument for a person not entitled to enforce the instrument.

9

First United failed to comply with its agreements with Panhandle Packing, and First United failed to exercise good faith in cashing the checks.

**Authority of Bookkeeper.** (Question 1). Among other things, the chief financial officer, and also director, officer, and principal shareholder of Panhandle Packing testified regarding the bookkeeper's authority to endorse checks without any restrictive endorsement. According to his testimony, when he discovered that the bookkeeper was endorsing checks without any restrictive provision, he instructed her to discontinue the practice. Considering this evidence in the light most favorable to the jury's finding and disregarding all evidence to the contrary, it constitutes some evidence of the absence of authority to endorse the checks without a restrictive endorsement, *i.e.*, "for deposit only."

**Good Faith.** (Questions 5 and 9). By its answer to question 5, the jury found that First United failed to comply with the deposit agreement. As part of question 5, the jury was instructed as follows:

> Every agreement between the parties or duty arising out of the agreement imposes an obligation of good faith in its performance or enforcement.
>
> For checks presented . . . prior to January 1, 1996, "good faith" means honesty in fact in the conduct or transaction concerned.
>
> For checks presented . . . after January 1, 1996, "good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing.

By its answer to question 9, which included similar instructions, the jury found that First United failed to exercise good faith in paying cash to the bookkeeper. Among other evidence, Panhandle Packing introduced First United's multi-page document entitled "Teller Performance Standards" which was admitted after counsel announced he had no objection. An employee of First United testified to the performance standards and described her training. She and another employee testified that the practice of paying cash to the bookkeeper was contrary to the standards.

In  Riley v. First State Bank, 469 S.W.2d 813, 816 (Tex.Civ.App.–Amarillo 1971, writ ref'd n.r.e.), we held that the test of good faith is not diligence or negligence. Similar issues were considered in Texas Stadium Corporation v. Savings of America, 933 S.W.2d 616 (Tex.App.--Dallas 1996, writ denied). In affirming a summary judgment, the court concluded that the fact that some of the bank employees had acknowledged that endorsements on the checks did not comply with internal policies did not, standing alone, raise a fact issue on good faith. Id. at 619-20. However, according to the summary judgment evidence, the bank employees had no knowledge of the embezzlement. In addition, the court held that even though acceptance of the checks may have constituted negligence, any negligence did not constitute bad faith and concluded the bank acted in good faith unless it had knowledge of the embezzlement. Here, however, First United announced it had no objection to admission of the teller performance standards into evidence and did not request a limiting instruction. Accordingly, the standards were before the jury for all purposes. Tex. R. Evid. 105(a); Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361, 365 (Tex. 1987); See also Cigna

11

Ins. Co. of Texas v. Evans, 847 S.W.2d 417, 421 (Tex.App.–Texarkanna 1993, no writ) (holding that in the absence of any directive to the fact finder to consider a piece of evidence only for a limited purpose, it may consider it for any and all purposes.) Notwithstanding *Riley* and *Texas Stadium*, because First United did not request that the teller performance standards be admitted for a limited purpose or that an appropriate instruction be given to the jury, the evidence was before the jury for all purposes. Based on this record, we conclude the teller performance standards and the testimony of the bank employees constituted some evidence of the absence of good faith. Issue one is overruled.

## Global Damage Question

By its fourth issue, First United contends the faulty submission of the global damage question prevented it from asserting its defenses that, alternatively, deny recovery to Panhandle Packing as a matter of law. We agree. By question 13, the jury was asked:

> [w]hat sum of money, if now paid in cash, would fairly and reasonably compensate Panhandle Packing and Gasket, Inc., for its damages, if any, that resulted from either First United Bank's failure to comply with the Deposit Agreement, if any, First United Bank's negligence, if any, or First United Bank's conversion, if any.
>
> Do not add any amount for interest, if damages, if any.
>
> Answer in dollars and cents, if any.
>
> Answer: $_____*294,974.13*_____

At the charge conference, counsel for First United objected as follows:

12

- it is an improper submission as to global damages as to each cause of action;

- there is no evidence, or there is insufficient evidence and an inability for the jury to determine the amount of damages for each claim separately; and

- each cause of action should have its own damage claim.

After overruling the objections, the court submitted the charge to the jury.

In Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388-89 (Tex. 2000), the Court disapproved of the global damage issue which submitted multiple theories of recovery. After discussing a single broad-form damage question which commingled invalid theories of liability with valid theories, the Court held the error was harmful because it could not be determined whether the improperly submitted theories formed the sole basis for the jury's finding.

Here, having held there was no evidence to support the submission of the conversion ground, the rule announced in *Crown Life* is controlling. *See also* Iron Mt. Bison Ranch v. Easley Trailer Mfg., 42 S.W.3d 149, 156 (Tex.App.--Amarillo 2000, no pet). Moreover, the prejudice and harm resulting from submission of multiple theories in one question is magnified because application of the statute of limitations to a given factual situation is a question of law, *See* Musgrave v. Brookhaven Lake Owners, 990 S.W.2d 386, 397 (Tex.App.--Texarkana 1999, pet. denied). The applicable statutes of limitation to the three distinct theories of recovery cannot be determined. Although First United pled various

statutes of limitation, because of the global submission of multiple theories, the court was unable to apply the appropriate limitations statute.[5] Issue four is sustained.

## Negligence

By it's third issue, First United contends the evidence established it was not negligent in cashing the checks. By its answer to question 8, the jury found Panhandle Packing 51 percent negligent. Accordingly, it may not recover damages if its percentage of responsibility is more than 50 percent. Tex. Bus. & Com. Code Ann. §§ 33.001 & 33.002(a) (Vernon 2002). Further, by its motion for judgment, Panhandle Packing did not seek judgment based on negligence. Considering our disposition of the case and the jury's finding that Panhandle Packing's responsibility was greater than 50%, it is unnecessary to address this issue. We do not have authority to render advisory opinions. Firemen's Ins. Co of Newark, New Jersey v. Burch, 442 S.W.2d 331, 333 (Tex. 1968); *See also* Tex. Const. art. V, § 8.

Our disposition of First United's second and fourth issues pretermits consideration of the remaining issues. Having held there was no evidence to support the jury's finding of conversion and that submission of the damage question on three theories of recovery was

---

[5]By it's motion for judgment, Panhandle Packing alleged that contract damages based on a four-year statute of limitations would be $333,435.14; based on a three-year statute would be $198,675.32 per section 3.118 of the Business and Commerce Code; and based on a two-year statute would be $107,683.83 per section 16.003 of the Texas Civil Practice and Remedies Code.

14

harmful error, but having overruled First United's no evidence challenge on the contract claim, we reverse and render in part and reverse and remand in part.

Accordingly, the judgment of the trial court is reversed and judgment is hereby rendered that Panhandle Packing and Gasket, Inc. take nothing against First United Bank of Dimmitt on its statutory and common law conversion claims and negligence claim; that portion of the trial court's judgment regarding Panhandle Packing's contract claim on its deposit agreement is reversed and the cause is remanded for further proceedings.

Don H. Reavis
Justice

Johnson, C.J., not participating.