Vernon R. YOUNG, Jr., Appellant,

v.

Lewis QUALLS, Appellee.

No. 07–03–0346–CV.

Court of Appeals of Texas,
Amarillo.

Sept. 16, 2005.

D. David Hearne, Fenley & Bate, LLP, Lufkin, H. Miles Cohn, Sheiness, Scott, Grossman & Cohn, LLP, Houston, for appellant.

Deborah Race, Ireland, Carroll & Kelley, P.C., Tyler, for appellee.

Before REAVIS and CAMPBELL, JJ.[1]

## OPINION

JAMES T. CAMPBELL, Justice.

Vernon R. Young, Jr. appeals a judgment in favor of Lewis Qualls for breach of their partnership agreement. Finding the evidence supporting the damages verdict to be factually insufficient, we will suggest a remittitur.

Young and Qualls engaged in real estate development projects with Young providing financing and Qualls either developing the property or constructing residences on property purchased by Young. Although Qualls and Young had a written partnership agreement governing a prior project, they relied on an oral partnership agreement in developing the property discussed here.

In 1994, Qualls contacted Young and proposed the purchase of a 75–acre tract of land outside Lufkin to develop mobile home lots that would be sold to mobile home dealers. The property was purchased by Young in the name of Hudson Place, LLC, an entity he formed and controlled. Qualls owned no interest in the limited liability company. The name Hudson Place also was adopted for the development. Young and Qualls agreed they would divide any profits from the project equally after invested funds were repaid with interest at 12 per cent per annum. After its purchase Young and Qualls changed the deed restrictions for the property, excluding mobile homes and requiring homes built on the property to be traditional residences.

Qualls and his wife Pam worked in an office at the site and supervised the clearing and development of the property for 18 months. They sent the bills for their costs to Young, who paid them. Prior to June 1996 Qualls and Young conducted negotiations with a homebuilder, and Qualls made other efforts to sell lots in the subdivision. No lots had been sold by that time, though, and during that month Young had the electricity and telephone to the office turned off without notice to Qualls. When they called him to ask about these events, Young told Qualls and his wife to take their personal belongings and vacate the property. They did so.

Young also owned a mobile home dealership in Lufkin. Later in June 1996 Young decided to re-plat the property from half-

---

1. Former Chief Justice Phil Johnson was on the panel that heard oral argument. He did not participate in the decision. Tex.R.App. P. 41.1(b).

acre plots to quarter-acre plots for use as a mobile home rental park. The deed restrictions were modified to reflect this change in July 1996. Barbara Unsel, an employee at Young's mobile home dealership, assumed the additional duty of managing Hudson Place as a mobile home park. Qualls filed suit in December 1998 seeking damages for breach of the partnership agreement, injunctive relief, and appointment of a receiver.[2]

After a jury trial in November 2002, the trial court signed a judgment awarding Qualls $142,550.00 in damages, $58,364.80 in prejudgment interest on that amount to the date of judgment, and $46,331.86 in attorney's fees. The judgment was based on the jury's responses to the following questions: (1) Did a partnership agreement exist between Lewis Qualls and Vernon Young for the development of Hudson Place? (2) Did Vernon Young breach the partnership agreement with Lewis Qualls? and (3) What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Lewis Qualls for his damages, if any, that resulted from such breach of the partnership agreement?

Young presents four issues challenging the judgment. He contends there is no evidence or, in the alternative, insufficient evidence to support the jury's finding of damages. He presents the same challenge to the jury's finding of a breach of the partnership agreement. Young also contends the trial court erred in awarding attorney's fees and in awarding prejudgment interest. On appeal, Young does not contest the jury's finding that a partnership agreement existed.

### Scope and Standard of Review

Young's first two issues present no evidence and insufficient evidence complaints.

In reviewing his no evidence issues, we will view the evidence in a light that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). A legal sufficiency challenge will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

Considering his contention the evidence is factually insufficient to support a finding, we will review all the evidence, both that favorable and that contrary to the finding, and may reverse only if the verdict is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *see Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761–62 (Tex.2003); *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989).

■ Young made no objection to the form of the questions or instructions contained in the court's charge. We review the sufficiency of the evidence, then, in light of the charge given. *Bradford,* 48 S.W.3d at 754; *City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 71 (Tex.2000).

### Breach of Partnership Agreement

■ We begin with Young's second issue, in which he challenges the evidence

---

**2.** The requests for injunctive relief and appointment of a receiver were not presented at trial.

supporting the jury's finding that he breached his partnership agreement with Qualls for the development of Hudson Place. Qualls's pleadings complained that Young, among other actions, "refused ... to recognize Qualls' interest as a partner, or even the existence of the partnership ... and expelled Qualls from the partnership offices and property." Qualls further alleged that Young "has further refused to recognize that the property of Hudson Place, L.L.C. is an asset of the partnership."

The unchallenged finding of the jury was that Young and Qualls had a partnership agreement for the development of Hudson Place.[3] In connection with the question inquiring whether Young breached that agreement, the jury was instructed that a partner owes to the partnership and to other partners a duty of loyalty, and that the duty includes accounting to the partnership and holding for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or from use by the partner of partnership property; and includes refraining from dealing with the partnership in a manner adverse to the partnership.[4] The Hudson Place property was conveyed to the limited liability company controlled by Young,[5] but his duties as partner encompassed a duty to hold and use it for the partnership. *See* TRPA Arts. 6132b–2.04, 6132b–4.01(e), 6132b–4.04(b)(1); 19 Robert W. Hamilton, *et al.,* Texas Practice: Business Organizations § 7.13 (2004). The circumstances of Young's expulsion[6] of Qualls from Hudson Place and his unilateral decision to convert it to another use provide evidence by which the jury could have found that Young disregarded the partnership's ownership of the subdivision and treated it as his own property, in violation of his duties as partner and in breach of their partnership agreement.

Although he asserted that Qualls and his wife were aware of the reasons for his actions,[7] Young acknowledged at trial he did not consult with Qualls before telling him to leave. During his testimony Young responded, "[t]hat is correct," to the question, "[b]ut it was your ... decision only, without any consultation or approval or involvement of [Qualls and his wife], to kick them off the property in June of 1996 and to turn this development into something else?"[8] Young did not criticize Qualls's work or his sales efforts. He

---

3. Young testified: "[Qualls] approached me about this property and about doing the subdivision, and I said that I would be willing to do it on the basis that we would split the profit if he would do the supervision and get it done and I would provide the money." Young also testified that Qualls and his wife "were supposed to handle the marketing."

4. See Tex.Rev.Civ. Stat. Art. 6132b–4.04 and 6132b–8.02 (Vernon Supp.2004). Tex.Rev. Civ. Stat. Art. 6132b–1.01 *et seq.* constitute the Texas Revised Partnership Act. Further references to the Act will be cited "TRPA Art. 6132b———."

5. At trial, Young initially took the position the property was not a partnership asset, but its status as such is not disputed on appeal. See TRPA Art. 6132b–2.05 and comment following that article.

6. Young does not deny on appeal that the evidence showed he expelled Qualls from Hudson Place. Qualls apparently did not return to Hudson Place or have any further role in its operation.

7. Young testified: "[T]hey had known for a long, long time that this project was in big trouble; and they were fully aware of it and had been aware of it for an extended period of time. And I waited way too long to take the measures that I took."

8. Young also agreed with his counsel's description of the events: "[Y]ou turned off the lights, turned off the phone, and basically said, 'Get your stuff and get off my property.'"

testified, "[T]he whole plan to begin with didn't work. It was just that simple."

The jury heard other testimony indicating that Young did not regard or treat Qualls as his partner with respect to Hudson Place.[9] Young acknowledged forming two previous partnerships with Qualls, one of them with a written partnership agreement. To a question from Qualls's counsel asking, "And you realize that [Qualls] was a partner in this [Hudson Place] transaction, don't you, sir?", though, Young responded, "I realize that we had an agreement." Evidence showed that, after he and Qualls reached their agreement, when Young received the proposed real estate contract for the purchase of the tract, he deleted Qualls's name as a purchaser and inserted the name of a corporation Young owned. On his attorney's advice, Young created Hudson Place, LLC, shortly before closing, for the purpose of purchasing the property. When asked if he discussed the changes in the identity of the purchaser with Qualls, he said, "I doubt it because I never intended for him to be on the contract." Contrary to Young's view of their relationship reflected in these and other similar statements, the jury found that Young and Qualls were partners.

Pointing out the Texas Revised Partnership Act contains no provision requiring a partner to remain in a partnership or setting a minimum term for a partnership, Young argues his actions in June 1996 amounted to a withdrawal from the partnership.[10] He also cites *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 546 (Tex.1998), for the proposition that absent agreement

for a set term, a partner has no duty to remain in a partnership or to retain another person as partner. *Bohatch* is inapposite. The Supreme Court dealt there with the expulsion of a partner pursuant to terms expressed in a written partnership agreement among many partners, not a partnership whose very existence was disputed. Moreover, while Young's actions might be viewed as notice of withdrawal, *see* TRPA Art. 6132b–6.01(b)(1), the jury was not required to view them as such when determining whether he breached the partnership agreement.

The jury heard evidence both legally and factually sufficient to support their finding that Young breached his agreement with Qualls. His second issue is overruled.

## Damages

■ Under his first issue, Young argues there is no evidence or insufficient evidence to support the jury's finding of damages. *See Golden Eagle Archery*, 116 S.W.3d at 761–62; *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996) (appellate courts required to conduct meaningful evidentiary review of damages awards).

Following the damages question, the court's charge contained an instruction that the jury should consider, as the only element of damages, "[t]he value, if any, of the partnership interest of Lewis Qualls."

■ The parties' arguments on appeal focus on the evidence of the market value of the Hudson Place subdivision and of the amount of the partnership's liabilities.[11]

9. Young's pleadings specifically denied the existence of a partnership with Qualls.

10. Qualls contends on appeal that the partnership was one for a particular undertaking, and that Young's actions, if considered a withdrawal, still were wrongful under TRPA Art. 6132b–6.02. We do not reach Qualls's contention.

11. The jury was not instructed concerning a definition of the "value" of Qualls's partnership interest. Nor was any direct evidence of the market value (or the value by any other measure) of an interest in the partnership offered. Qualls was not asked, for instance, his opinion of the value of his interest in the partnership. *Cf. Atterbury v. Brison*, 871 S.W.2d 824, 828 (Tex.App.-Texarkana 1994,

Young's specific argument is that there is no evidence, or insufficient evidence, the market value of the subdivision exceeded the partnership's liabilities by the amount necessary to allow the jury to find that Qualls's half interest in the partnership had a value of $142,550. The jury found there was a breach of the partnership agreement, but made no finding of when the breach occurred. The parties do not disagree that, under the court's charge, the damages finding can be supported by evidence that the subdivision's market value exceeded the partnership's liabilities by the requisite amount either at the time of Young's 1996 expulsion of Qualls from the subdivision or at the time of trial. Young contends there is no evidence or insufficient evidence to support such a value for Qualls's partnership interest at either time.

Each side presented the written report and opinion testimony of an expert appraiser concerning the market value of the subdivision property. Clark Gimpel testified for Qualls, giving his opinion that the 75 acres had a market value of $800,000 as of the May 2001 date of his report. Young presented the testimony of William Lyon, whose report and testimony opined the market value of the property to be $325,000 as of July 1, 1996. Although each appraiser based his opinion of market value on both a comparative sales approach and an income approach, Lyon valued the tract based on its use in 1996 as a single-family residential subdivision, while Gimpel's valuation was based on its use in 2001 as a mobile home rental park.

■ Qualls contends there was evidence by which the jury could have found the property had a value when Young expelled Qualls greater than the $325,000 value appraiser Lyons gave it. Qualls points to a June 1995 contract for the sale of one lot in the 106–lot subdivision for $12,995. He also relies on evidence of an arrangement with a homebuilder, under which lots would have been valued at $15,000. The evidence also included a letter Qualls sent Young in February 1996, proposing the sale of lots at prices ranging from $7500 to $15,000, resulting in total receipts of $1,270,000 if all 106 lots were sold at the proposed prices. Finally, Qualls points to a July 1996 offer that his counsel forwarded to Young after Qualls's expulsion. The offer was signed by the proposed buyer and offered to purchase the subdivision for $850,000. We must agree with Young that none of these proposals provide evidence of the market value of Hudson Place. None of the proposals were consummated. The partnership made no actual sale of any lot in the subdivision. Unaccepted offers to purchase or sell property are generally held not to be evidence of its market value. *See Hanks v. Gulf, Colorado & Santa Fe Ry. Co.,* 159 Tex. 311, 320 S.W.2d 333, 336–37 (1959); *Lee v. Lee,* 47 S.W.3d 767, 785 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

As noted, appraiser Gimpel testified to a market value of the property of $800,000. We see no evidence that the property had a greater market value.

Evidence of the amount of the partnership's indebtedness for its purchase and development of the tract included Young's

writ denied) (citing partner's testimony concerning market value of his partnership interest). The case was presented at trial on the theory that the value of Qualls's 50% interest equalled half of the difference between the market value of the Hudson Place subdivision and the partnership's liabilities. We do not understand that theory to be questioned on appeal, and we assume its correctness for purposes of our review. *Cf. American Mut. Liability Ins. v. Parker,* 144 Tex. 453, 191 S.W.2d 844, 848 (1945) (appeals court should not decide a case on a theory different from that on which it was pled and tried).

testimony that the land and development costs at the time he told Qualls to leave was "approximately $400,000." The closing statement showed the land cost $113,891.25. Young also testified that he borrowed funds to finance the tract's purchase and development from his mother and from trusts that benefitted his children. The evidence admitted included a promissory note payable to those lenders, signed by Young on behalf of Hudson Place, LLC, and providing for advances up to $350,000, and a deed of trust securing the note.[12] Young testified that the entire $350,000 was advanced during the course of development of the subdivision, most of it by March of 1996.

When questioned about Young's testimony that "approximately $400,000" had been spent on the property, Qualls testified that costs incurred at the time he was told to leave the property were "a little less than $400,000," remembering "about 260–something thousand in construction," in addition to the land cost. He also said records of the amounts spent were "on the computer." A spreadsheet kept by Pam Qualls listing expense invoices paid by Young showed development costs totaling $276,220.46 were paid through November 1995.

Qualls's testimony confirmed that, under his agreement with Young, funds invested in the property would bear interest at 12%, the rate stated in the $350,000 note. The evidence, including the testimony of Young and Qualls, consistently reflects that funds invested in Hudson Place amounted at least to $390,111.71, the total of the land cost and the development expenses recorded in the spreadsheet kept by Pam Qualls on behalf of the partnership. We conclude a calculation of Qualls's

damages, based on his asserted theory of valuation of the partnership, that does not take into account land and development costs totaling the amount of $390,111.71, plus interest, is so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

Young contends the partnership's liabilities also must include the additional funds Young testified he spent to convert the subdivision to a mobile home park. Young placed into evidence a promissory note, payable on demand, bearing the date July 17, 1997, signed by him on behalf of Hudson Place, LLC, by which the company agreed to pay Young the principal amount of $215,194.30, "or so much thereof as may be advanced and outstanding hereunder." The note provided for interest at ten percent per annum. His evidence also included a deed of trust on the subdivision, stating that it secured payment of a promissory note "of even date herewith" in the principal sum of $215,194.30. The deed of trust was signed on July 13, 1999, also by Young.

Unlike the evidence supporting the expenditure of the funds advanced under the $350,000 note, only Young testified to the amounts spent on Hudson Place after Qualls's departure. No itemization like Pam Qualls's spreadsheet supported Young's testimony of the additional expenditures. Young described in general terms the steps he undertook to make the property suitable for use as mobile home rental spaces, which included making improvements to the roads, installing electric lines and water and sewer taps to the spaces, and having engineers replat the property. He testified he paid for that work, and that the July 17, 1997 note

12. The deed of trust was dated June 30, 1995, "effective" November 17, 1994, but was signed on March 20, 1996. It was payable on demand and by November 24, 1996 in the absence of demand. The deed conveying the 75–acre tract to Hudson Place, LLC, is dated November 16, 1994.

"reflects the monies that I was putting into ... the property to keep it going and get it habitable. And there was enough in [the note] to take care of additional monies that we knew would have to be put in after this date." He said not all the principal amount of the note had been advanced by its date, but that "as far as I know," the $215,194.30 had been completely advanced when he signed the deed of trust in July 1999.[13]

The testimony of an interested witness like Young, even if uncontradicted, does no more than raise an issue of fact to be determined by the jury unless that testimony is clear, direct and positive, and there are no circumstances in evidence tending to discredit or impeach the testimony. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). Young's testimony of the amounts he spent after Qualls left the property was not clear, direct and positive. The jury was not required to give it credence when determining the partnership's liabilities.

Summarized, as of the time of trial,[14] the evidence supports a market value of no more than $800,000 for Hudson Place, and liabilities of no less than $690,497, consisting of the $390,111.71 invested in the property and interest on that amount from June 1996 to November 2002 of $300,386. Under Qualls's damages theory, then, his damages supported by the record did not exceed $54,751.50. The jury awarded $142,550. We sustain Young's first issue.

## Attorney's Fees

We next address whether the court erred in awarding attorney's fees. Young argues that Qualls in essence asserted against him claims for breach of the statutorily imposed duties of loyalty and good faith under the TRPA, and attorney's fees are not recoverable for breach of such duties. We disagree with the argument. Qualls sought to recover attorney's fees under Civil Practice and Remedies Code Section 38.001, which provides for the recovery of attorney's fees for a claim on an oral or written contract. Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997). Recovery of attorney's fees is proper in an action founded on an oral or written partnership agreement. *See Atterbury,* 871 S.W.2d at 828. The jury here was asked initially to determine whether a partnership agreement existed between Qualls and Young, and in broad fashion then asked to determine whether the agreement was breached. As submitted to the jury, Qualls's suit was one founded on an oral partnership agreement. *See also Long v. Lopez,* 115 S.W.3d 221, 228 (Tex.App.-Fort Worth 2003, no pet.) (permitting attorney's fees pursuant to Section 38.001(8) in suit against partner to enforce right under TRPA Art. 6132b–4.01(c)). The court did not err in awarding Qualls attorney's fees. Young's third issue is overruled.

## Prejudgment Interest

Young's fourth issue contends the trial court erred in awarding prejudgment interest. The trial court awarded

---

13. Young testified his wife determined the amount of the note and would have better information about the advancements of funds, but Mrs. Young did not testify. Barbara Unsel, who managed Hudson Place for Young beginning in July 1996, testified that Young paid her husband and others for work at the mobile home rental park, but she did not quantify the amounts paid.

14. Neither party contends the market value of the property varied materially between the date of Gimpel's appraisal and the date of trial. Young's brief notes Gimpel's opinion that the value of the property was generally increasing at the time of his appraisal in 2001.

Qualls prejudgment interest from the date he filed suit through the date of judgment. Qualls based his request for prejudgment interest on *Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex.1998).[15] Prejudgment interest fully compensates the plaintiff by providing additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *See Id.* at 528; *Miga v. Jensen*, 25 S.W.3d 370, 381 (Tex.App.-Fort Worth 2000, *rev'd on other grounds*, 96 S.W.3d 207 (Tex.2002)). An award of prejudgment interest can lead to an impermissible double recovery. *See City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 391 (Tex.App.-Houston [14th Dist.] 2004, no pet.). *See also Miga*, 25 S.W.3d at 381 (award of prejudgment interest inequitable under circumstances).[16] We review the award of prejudgment interest under an abuse of discretion standard. *Beacon Nat'l Ins. Co. v. Glaze*, 114 S.W.3d 1, 5 (Tex.App.-Tyler 2003, pet. denied).

Young contends that whether prejudgment interest is recoverable depends on whether the evidence supports the jury's award of damages based on the value of Qualls's partnership interest as of the time of his expulsion from Hudson Place in 1996. If the jury's damages verdict is not supported by evidence of the property's value in 1996, Young argues, but is supported only by evidence of the property's appreciated value at the time of trial, an award of prejudgment interest on the appreciated value would constitute a double recovery.

Although we have concluded, in our disposition of Young's first issue, that the jury's award of damages to Qualls in the amount of the value of his partnership interest cannot be supported based on the value of the Hudson Place property at the time of his 1996 exclusion, we do not agree that the award of prejudgment interest duplicated the damages awarded. Young's argument might be persuasive if prejudgment interest commenced in 1996. It commenced, though, pursuant to *Johnson & Higgins*, 962 S.W.2d at 531, on the date suit was filed, in December 1998. The record does not reflect the value of the property at that time. Barbara Unsel testified that the first mobile home lots were rented in March or April 1997, so the property was by then being utilized for the use for which Clark Gimpel appraised it. The trial court did not abuse its discretion by awarding prejudgment interest from the date of suit. Young's fourth issue is overruled.

## Conclusion

▆▆ If we find that part of a damages verdict lacks sufficient evidentiary support, our proper course is to suggest a remittitur of that part of the verdict. *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex.1987); *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986); Tex.R.App. P. 46.3. Accordingly, we suggest a remittitur of $87,798.50, the difference between the $142,550 jury award and the $54,751.50 we have found supported by the evidence. If, within 20 days of the date of this opinion, Qualls makes a remittitur of that amount, our judgment reforming the trial court's judgment to reduce Qualls's damages to the sum of $54,751.50 and affirming the judgment as reformed will issue. Otherwise, we will reverse the trial court's judg-

15. In their discussions of this issue on appeal, both Qualls and Young analogize to provisions of the TRPA but neither contends any statutory provision directly applies.

16. *But cf. CTTI Priesmeyer, Inc. v. K. & O. Ltd. Partnership*, 164 S.W.3d 675, 683–84 (Tex.App.-Austin 2005, no pet.) (discussing application of "one satisfaction rule" to contract claims).

ment and remand the cause for a new trial. *Larson,* 730 S.W.2d at 641.